FILED
SUPERIOR COURT
OF GUAM

2022 MAY 24 PM 4: 10

CLERK OF COURT

BY:_____

## IN THE SUPERIOR COURT OF GUAM

| THE PEOPLE OF GUAM,<br><br>vs.<br><br>MATTHEW OTIS JOHN aka Matthew Wia aka J.R. Sunny aka Mack John aka Jesus,<br><br>Defendant. | CRIMINAL CASE NO. CF0329-21<br><br>DECISION AND ORDER |
|---|---|

## INTRODUCTION

This matter came before the Honorable Vernon P. Perez on March 23, 2022, for hearing on Defendant **MATTHEW OTIS JOHN aka Matthew Wia aka J.R. Sunny aka Mack John aka Jesus's** ("Defendant") Motion to Suppress. Assistant Attorney General Richelle Y. Canto was present on behalf of the People of Guam ("the Government") and Defendant was present with counsel, Assistant Public Defender Alisha Molyneux. Having reviewed the pleadings, the arguments presented, and the record, the Court now issues the following Decision and Order DENYING Defendant's Motion to Suppress.

## BACKGROUND

Defendant is charged with Possession of a Schedule II Controlled Substance (As a Third Degree Felony) with an attached Notice: Commission of a Felony While on Felony Release. (Indictment, Jul. 13, 2021). This charge stems from the discovery of a white plastic bag with a white color crystal-like substance suspected to be methamphetamines and a clear

improvised glass pipe beneath the driver's seat of a vehicle operated by Defendant on or about July 6, 2021. (Decl. of Brendlynn O. Joseph, Magistrate's Compl., Jul. 7, 2021). At the time of this alleged offense, Defendant was on pre-trial release in Criminal Case No. CF0162-19. *Id.*

On December 9, 2021, Defendant filed a Motion to Suppress. On December 28, 2021, the Government filed its Opposition.

On February 23, 2022, the Court heard sworn testimony from Guam Police Department Officer Kyler Valenzuela ("Officer Valenzuela"). At the conclusion of the hearing, the Court gave the parties leave to submit proposed findings of fact and conclusions of law.

On March 10, 2022, Defendant filed his Proposed Findings of Fact and Conclusions of Law and on March 21, 2022, the Government filed its Proposed Findings of Fact and Conclusions of Law. The Court subsequently placed the matter under advisement.

At the Suppression Hearing, the Court ascertained the following facts:

(1) On July 6, 2021 around 3:35 am, Officer Valenzuela was driving on East Swamp Road when he observed a blue Mitsubishi Mirage off the road parked behind a bus stop. Officer Valenzuela testified that there was not a lot of street lighting in this area and that it was very dark.

(2) As Officer Valenzuela approached the vehicle, his headlights illuminated the vehicle and he saw two occupants. He observed the driver quickly moving his left hand from his face towards the driver door. Officer Valenzuela testified that it appeared he was concealing something because his hand was tightly clenched.

(3) Officer Valenzuela exited his vehicle and approached the driver of the car. Officer Valenzuela had a flashlight with him. The driver's window was already down. Officer Valenzuela asked what they were doing. The driver identified himself as Matthew Wia and stated he lived down the street and that his passenger was using his cell phone.

(4) Officer Valenzuela peered down into the driver door while he was speaking with Defendant and noticed in the door handle area a clear plastic baggie containing a

white crystalized substance he suspected was methamphetamine. Officer Valenzuela testified he saw the plastic baggie when he looked directly downwards.

(5) Officer Valenzuela told Defendant what he saw, to which Defendant said "I'm sorry sir, that's mine." Officer Valanzuela asked Defendant to exit the vehicle and conducted a pat down search. Officer Valenzuela located a knife on Defendant's waistband. Officer Valenzuela then conducted a search of the vehicle and found a clear glass pipe beneath the driver's seat, which contained suspected crystal methamphetamine residue.

(6) Officer Valenzuela also interviewed the passenger of the vehicle. The passenger stated that he was arguing with his girlfriend around 3 am at his house, he left his house and began walking and noted his cousin, the Defendant, behind the bus stop. He asked Defendant to use his cell phone. As he was calling his mother, the police arrived. A pat down search was also conducted on his person; no items were located on him. He claimed he had no knowledge that there were drugs in the vehicle.

(7) Officer Valenzuela testified that Swamp Road is a high crime rate area and that he has dealt with things from simple thefts to burglaries of vehicles and drug transactions.

## DISCUSSION

Defendant moves the Court to suppress evidence seized in this matter because GPD Officer Valenzuela did not have any reasonable suspicion to stop him. *See generally*, Mot. Suppress, Dec. 9, 2021; Deft. Proposed FFCL, Mar. 10, 2022.

The Fourth Amendment to the U.S. Constitution "protects against unreasonable searches and seizures and is made applicable to Guam via section 1421(b)(c) of the Organic Act of Guam." *People v. Chargualaf*, 2001 Guam 1 ¶ 14 (internal citations omitted). Brief investigative detentions are permitted under the Fourth Amendment "when a police officer has reasonable suspicion that an individual was engaged in or is about to be engaged in illegal conduct." *People v. Johnson*, 1997 Guam 9 ¶ 4 (citing *Terry v. Ohio*, 392 U.S. 1 (1968)). "The reasonable suspicion necessary to justify an investigatory stop is dependent upon both the

content of information possessed by police and its degree of reliability." *Id.* at ¶ 5 (citation and internal quotation marks omitted).

The Fourth Amendment, however, is not implicated in every situation where police officers have contact with an individual. *See Florida v. Bostick*, 501 U.S. 429 (1991). The protection against unreasonable searches and seizures is not implicated "simply because a police officer approaches an individual and asks a few questions." *Id.* at 434. *See also Chargualaf*, 2001 Guam 1 ¶ 20 ("Investigative questioning regarding criminal activity does not, in itself, implicate the Fourth Amendment."). "Obviously, not all personal intercourse between policemen and citizens involves 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Bostick*, 501 U.S. at 434. (citing *Terry v. Ohio*, 392 U.S. 1, 19, n.16 (1968)).

When examining whether an encounter between police and a citizen constitutes a seizure under the Fourth Amendment, "a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a *reasonable person* that the person was not free to decline the officers' requests or otherwise terminate the encounter." *Id.* at 439 (emphasis added). *See also People v. Cundiff*, 2006 Guam 12 ¶ 21. The reasonable person test presupposes an *innocent* person. *Bostick*, 501 U.S. at 438. (emphasis added). "Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *United States v. Mendenhall*, 446 U.S. 544 (1980). "While most citizens will respond to a police request, the fact that people do so, and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response." *I.N.S. v. Delgado*, 466 U.S. 210, 216 (1984).

In this case, Defendant was not pulled over by police while driving his vehicle on the road. Defendant was parked behind a bus stop on Swamp Road when Officer Valenzuela

approached him to ask a few questions. Officer Valenzuela testified that this occurred at 3:35 in the morning on Swamp Road, an area which he knew from prior investigations of illegal conduct. Officer Valenzuela also testified that he had observed the driver of the vehicle move his hand from the front of his face towards the driver door and that it appeared that he was concealing something because his fist was clenched. "[A] police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." *Terry*, 392 U.S. at 22. The Court finds that the initial interactions between Defendant and Officer Valenzuela constituted a consensual encounter that did not implicate the Fourth Amendment.

Officer Valenzuela testified that when he approached the driver's side of the vehicle, the driver's window was already down. Officer Valenzuela asked the occupants of the vehicle what they were doing, to which Defendant identified himself and stated he lived down the street and his passenger was just using his cell phone. There is no evidence Officer Valenzuela approached Defendant with a weapon drawn, or that he was overly aggressive or demanding in speaking with Defendant. Defendant's vehicle was not blocked by police cars, nor was he surrounded by police officers instructed to keep him at the location. Further, Defendant had voluntarily rolled down his window prior to Officer Valenzuela arriving at the driver side door. Accordingly, the Court finds that Officer Valenzuela did not restrain Defendant's freedom to walk away, prior to his discovery of the suspected methamphetamine in the driver door and asking Defendant to step out of the vehicle. *See, e.g., People v. Quintanilla*, 2020 Guam 8 ¶¶ 24-26.

Officer Valenzuela testified that as he was speaking with Defendant, he glanced downward into the car and saw a clear plastic baggie containing a white crystalized substance which he suspected was methamphetamine. After Defendant admitted that the baggie was his, Officer Valenzuela asked him to step out of the vehicle and conducted a pat-down search. Once the suspected methamphetamine was discovered in the driver door, Officer Valenzuela then had reasonable suspicion to arrest and detain Defendant for a felony offense of Possession of a Schedule II Controlled Substance. *See* 9 G.C.A. §§ 67.401.2(a) & (b)(1); 8 G.C.A. §

20.15(a)(1). This arrest would also allow for a search incident to arrest of the vehicle. *See, e.g., Arizona v. Grant*, 556 U.S. 332, 343-44 (2009) (concluding that "circumstances unique to the vehicle context justify a search incident to lawful arrest when it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle."); *Curd v. City Court of Judsonia, Arkansas*, 141 F.3d 839, 842 (9th Cir. 1998) ("Warrantless searches incident to a custodial arrest are justified by the reasonableness of searching for weapons, instruments of escape, and evidence of crime when a person is taken into official custody and lawfully detained. The search must be of objects within the arrestee's area of immediate control and must be contemporaneous with the arrest."); *United States v. Page*, 679 F.Supp. 2d 648, 654 (E.D. Va. 2009) ("The Court in *Grant* specifically cited drug offenses as illustrative of the exception to the rule announced. Accordingly, under the rationale in *Grant*, the seizure of a quantity of marijuana from the defendant, justified the search of the passenger compartment of his vehicle."). Therefore, the Court denies Defendant's Motion to Suppress.

## CONCLUSION

For the foregoing reasons, the Court hereby DENIES Defendant's Motion to Suppress. A Status Hearing is set for **July 7, 2022 at 9:00 a.m.**

**IT IS SO ORDERED** this 24th day of May, 2022.

HONORABLE VERNON P. PEREZ
Judge, Superior Court of Guam